UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MALIYAH NICHOLE HIMON,

Plaintiff,

vs.

INKSTER POLICE LT. ANDREA LEBO, INKSTER POLICE OFFICER KENYETTA FRAZIER, INKSTER POLICE OFFICER TA'VAN HALL, and INKSTER POLICE OFFICER CARY BORN,

Defendants.

Case No.: _____________
Hon. ___________________

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

JAMES J. HARRINGTON, IV (P65351)
GARY N. FELTY, JR. (P55554)
Attorneys for Plaintiff
Fieger, Fieger, Kenney & Harrington, P.C.
19390 West Ten Mile Road
Southfield, MI 48075
(248) 355-5555
Fax: (248) 355-5148
j.harrington@fiegerlaw.com
g.felty@fiegerlaw.com

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

Plaintiff, MALIYAH NICHOLE HIMON, through her attorneys, FIEGER, FIEGER, KENNEY & HARRINGTON, P.C., states the following as her Complaint against Defendants INKSTER POLICE LT. ANDREA LEBO, INKSTER POLICE OFFICER KENYETTA FRAZIER,

INKSTER POLICE OFFICER TA'VAN HALL, and INKSTER POLICE OFFICER CARY BORN:

## OVERVIEW

1. This matter involves the wrongful detention and arrest of MALIYAH NICHOLE HIMON at her home by all defendants, and the use of unreasonable, unnecessary and excessive force, including tasing of Plaintiff by Defendant CARY BORN on September 23, 2025.

## PARTIES AND VENUE

2. Plaintiff, MALIYAH NICHOLE HIMON, was at all material times a resident of Wayne County, Michigan, which is located within the Eastern District of Michigan.

3. Defendant, INKSTER POLICE LT. ANDREA LEBO, was at all material times a police officer, who was acting under color of law and within the scope of her employment by the City of Inkster, which is in Wayne County, Michigan.

4. Defendant INKSTER POLICE LT. ANDREA LEBO is being sued in her individual capacity.

5. Defendant, INKSTER POLICE OFFICER KENYETTA FRAZIER, was at all material times a police officer, who was acting

under color of law and within the scope of her employment by the City of Inkster, which is in Wayne County, Michigan.

6. Defendant INKSTER POLICE OFFICER KENYETTA FRAZIER is being sued in her individual capacity.

7. Defendant, INKSTER POLICE OFFICER TA'VAN HALL, was at all material times a police officer, who was acting under color of law and within the scope of his employment by the City of Inkster, which is in Wayne County, Michigan.

8. Defendant INKSTER POLICE OFFICER TA'VAN HALL is being sued in his individual capacity.

9. Defendant, INKSTER POLICE OFFICER CARY BORN, was at all material times a police officer, who was acting under color of law and within the scope of her employment by the City of Inkster, which is in Wayne County, Michigan.[1]

10. Defendant INKSTER POLICE OFFICER CARY BORN is being sued in her individual capacity.

11. Venue lies in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b)(2).

[1] According to the City of Inkster's website, Officer Born's preferred pronouns are "she/her/hers."

## JURISDICTIONAL ALLEGATIONS

12. This is a civil action for monetary damages being brought pursuant to 42 U.S.C. §1983, which guarantees citizens of the United States an action at law against any person who, acting under color of law, deprives them of their rights secured by the United States Constitution.

13. Plaintiff seeks all compensatory damages allowable for a violation of 42 U.S.C. §1983 and punitive damages for the reckless and callous indifference exhibited by the individual defendants to her constitutional rights in addition to taxable costs, interest, and attorney fees under F.R.C.P. 54(d), 28 U.S.C. §1920, 28 U.S.C. §1961, and 42 U.S.C. §1988.

14. Plaintiff seeks those damages stated above and all additional damages, past, present, and future, otherwise allowed at common law or by statute, that include but are not necessarily limited to:

a. Reasonable compensation for the deprivation of her constitutional rights, including but not limited to being subjected to excessive force, unlawful detention, and an unlawful arrest.

b. Reasonable compensation for the physical pain and suffering that she endured when she was

grabbed, detained, tased, thrown to the ground, and handcuffed and the physical pain that she will continue to endure into the future,

c. Reasonable compensation for any physical injuries that she sustained when she was grabbed, detained, tased, thrown to the ground, and handcuffed and from which she will continue to suffer into the future,

d. Reasonable compensation for the mental anguish she suffered and will continue to suffer into the future that includes but is not limited to post-traumatic stress disorder,

e. Reasonable compensation for the denial of social pleasure and enjoyments that she has suffered and will continue to suffer into the future,

f. Reasonable compensation for the fright and shock that she suffered and will continue to suffer into the future,

g. Reasonable compensation for the embarrassment, humiliation, and/or mortification that she has suffered and will continue to suffer into the future,

h. Reasonable compensation for any aggravation of preexisting ailments or conditions that she has suffered and will continue to suffer into the future,

i. Reasonable compensation for medical and therapeutic treatment expenses she has incurred and will continue to incur into the future,

j. Repayment of any liens for services incurred by her,

k. Economic damages including but not limited to wage loss, loss of earning capacity, and the loss of the value of services that she has suffered and will continue to suffer into the future,

l. Allowable interest,

m. Allowable costs and fees,

n. Allowable attorney fees, and

o. Any additional allowable damages that become known throughout the course of litigation.

15. This Court has jurisdiction pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343, and 28 U.S.C. §1367.

16. Plaintiff further invokes this Court's supplemental jurisdiction under 28 U.S.C. § 1367(a) over any Michigan-law claims pleaded herein because they are so related to Plaintiff's federal claims that they form part of the same case or controversy.

## STATEMENT OF FACTS

17. Plaintiff MALIYAH HIMON had not yet gotten cleaned up and dressed for the day on September 23, 2025, when Defendant LEBO, alongside Defendant FRAZIER, approached the southwesterly facing front door of her family's ranch-style home at approximately 11:44:20 a.m.



18. Upon information and belief, the defendants sought to execute a misdemeanor arrest warrant upon Ms. Himon's uncle, who they believed to be inside the house.

19. Defendant LEBO saw a person behind the front door as she approached and exclaimed: "I see you at the front door, just open it my man, talk to me."

20. The person behind the door was not a man; the person was a twenty-year-old young lady, MALIYAH HIMON.

21. Ms. Himon opened the entrance door and talked to Defendant LEBO.

22. Defendant LEBO told Ms. Himon that she was looking for her uncle and Ms. Himon responded, "I don't know if he's here, I just got up."

23. Ms. Himon did not know if her uncle was present because, when her uncle was at the home, he stayed in the attached garage that had been converted into a studio-style apartment.

24. Defendant LEBO replied at approximately 11:44:33: “he is, his tether’s pinging here, just have him come talk to me.”

25. Defendant FRAZIER heard Defendant LEBO instruct Ms. Himon to tell her uncle to come talk with them.

26. According to his police report, Defendant HALL heard the dialogue between Defendant LEBO and Ms. Himon.

27. In response to Defendant LEBO’s instruction, Ms. Himon said that her uncle was not physically inside the house.

28. Defendant LEBO did not ask where the subject might be but understood that he was not physically in the home.

29. Defendant FRAZIER likewise knew that the subject was not inside the main portion of the home.

30. Ms. Himon then said, “one moment,” and turned to go to the garage to inform her uncle that the police were there and looking for him.

31. Both Defendants LEBO and FRAZIER stood near the front door looking into the house while Ms. Himon went to do as she was told.

32. To do what she was told by Defendant LEBO, Ms. Himon was required to go out the back door of the home on its northeastern side and enter the garage through its northeasterly facing rear service door.

33. Ms. Himon set out to follow the instruction she was given at approximately 11:44:42.

34. Defendant TA'VAN HALL was already in the backyard.

35. Though he wrote in his police report that he observed Ms. Himon exit the house quickly and move quickly to the garage, Defendant HALL's body camera shows her exiting the back door of the house in normal fashion at approximately 11:44:58 and casually walking in a northeasterly direction along the back of the house toward its garage.

36. Defendant HALL did not ask Ms. Himon to stop or tell her that he was present.

37. Rather, Defendant HALL waited for Ms. Himon to get out of view and then radioed to the other three officers at approximately

11:45:05 and told them that she was heading to the other side of the house.

38. Defendant HALL then directly told Defendants KENYETTA FRAZIER and CARY BORN that Ms. Himon had just gone to the other side of the house at approximately 11:45:10.

39. Defendant HALL followed Ms. Himon and observed an open service door on the western edge of the back of the garage leading into the illuminated structure.

40. Defendant BORN approached following the same path as Defendant HALL.

41. Defendant BORN passed Defendant HALL and walked into the garage at approximately 11:45:31.

42. The garage was well illuminated with both overhead lighting and natural light entering through the top and bottom of the partially open overhead garage door on the southern side of the building, opposite the service door.

43. Defendant BORN clearly saw Ms. Himon's uncle standing in front of her in the middle of the garage, and exclaimed, "hold it right there, buddy," startling Ms. Himon, who had been speaking with her uncle.

44. Defendant BORN's entrance caused Ms. Himon to sit on a couch on the eastern side of the garage and raise her hands into the air.

45. Ms. Himon's uncle also raised his hands into the air.

46. Defendant BORN, already holding her taser, instructed the uncle to lie down and threatened to shoot him with the dangerous device.

47. Ms. Himon's uncle immediately complied and lay face down on the concrete.

48. Ms. Himon remained seated with her arms extended outward from her body.

49. Defendant HALL walked between Defendant BORN and Ms. Himon, bent down, and successfully handcuffed Ms. Himon's uncle who offered no resistance whatsoever, though HALL's police report incorrectly states that the subject passively resisted arrest.

50. Ms. Himon remained seated on the couch and told both defendants that her uncle did not have anything on him.

51. Then, for no articulable reason, Defendant HALL suggested at 11:45:48 that they should take Ms. Himon in for obstruction.

52. Ms. Himon asked why, reminding the officers that she was doing what they asked her to do.

53. Ms. Himon questioned: "obstruction, what do you mean, I just told him you guys were here."

54. While Defendants BORN and HALL were arresting the subject uncle without incident, Defendants LEBO and FRAZIER were positioning themselves outside the garage, in front of the overhead service door, presumably in case the subject uncle attempted to take flight, which they knew he had not.

55. In that regard, while Defendants BORN and HALL were entering the back service door of the garage, Defendants LEBO and FRAZIER had left the front door area of the home and moved east in front of the garage's overhead door at approximately 11:45:20.

56. The overhead door was open and its bottom edge was approximately two feet above the ground.

57. Defendant LEBO had lain down on the ground in front of the overhead door at approximately 11:45:33 and looked under it as Defendant BORN was telling the subject uncle to show his hands and to get on the ground.

58. She could clearly see that the subject was compliant and that Ms. Himon was seated on a couch with her hands in the air.

59. At the same time, Defendant FRAZIER, holding her pistol in her right hand, stood behind Defendant LEBO.

60. Approximately ten seconds later, Defendant FRAZIER calmly approached the overhead door and lifted it to its fully open position at approximately 11:45:43 such that both she and Defendant LEBO could see the arrest of Ms. Himon's uncle as it was occurring.

61. Defendant FRAZIER then casually entered through the then open front overhead door at 11:45:48 and told Ms. Himon, "Shut up!" as the young lady was telling Defendant HALL that she had entered the garage to tell her uncle that the police were at the front door waiting for him.

62. Defendant FRAZIER then told Ms. Himon to stand up, which she did.

63. No officer told Ms. Himon that she was not free to leave.

64. No officer told Ms. Himon she was being detained or arrested.

65. However, Defendant FRAZIER lunged at Ms. Himon at approximately 11:45:54, causing Ms. Himon to instinctively back up and raise her arms into the air, but not in an aggressive posture.

66. Without further instruction, Defendant FRAZIER forcefully grabbed Ms. Himon at approximately 11:45:56 and slung her toward Defendant BORN, who was already holding a taser that she had been previously aiming at the compliant uncle.

67. Defendant BORN immediately shot Ms. Himon in the chest, at point-blank range with the taser in dart-probe mode.

68. The tasing achieved neuromuscular incapacitation and Ms. Himon fell to the ground where she wet herself.

69. Ms. Himon was then handcuffed as she writhed around on the ground in pain, crying and lying in her own urine.

70. Plaintiff MALIYAH HIMON was thereafter arrested and detained for approximately one-half hour, with darts stuck in her chest, before being released at approximately 12:15 p.m., so she could be taken by family to the hospital to have the darts removed from her chest.

71. Ms. Himon sought medical attention and the taser probes fired into her chest by Defendant BORN were removed.

72. She continued and will continue to suffer from pain, physical injuries, and emotional injuries.

73. Ms. Himon was subsequently charged with the felony of obstruction by the City of Inkster at the direction of Defendants LEBO, FRAZIER, HALL, and BORN, and with the ratification of Inkster Police Commander SHAWN VARGO.

74. The very conduct that the defendants subsequently characterized as obstruction was the conduct that Defendant ANDREA LEBO had instructed Ms. Himon to perform.

75. The charges against Plaintiff MALIYAH HIMON were ultimately dismissed because of the City's failure to produce evidence of probable cause to make the arrest.

## LEGAL PRINCIPLES

76. "Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action

at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. §1983.

77. The Fourth Amendment to the United States Constitution guarantees free citizens the right to be secure in their persons from unreasonable seizures, which includes the right to be free from unreasonable or excessive force during an arrest.

78. A seizure occurs when a person's freedom of movement is restrained by means of physical force or a show of authority.

79. The Fourth Amendment requires a particularized and objective basis for suspecting a person of criminal activity to support an investigatory stop and the stop must be lawful at its inception.

80. Inchoate and unparticularized suspicions or hunches do not justify a seizure.

81. A person's avoidance of an officer does not justify a stop.

82. It is clearly established that an officer may not arrest a person without probable cause to make the arrest.

83. Seizing officers owe citizens the constitutional duty to limit the use of force during detention to what is reasonable and proportional according to the totality of the circumstances; and, to reduce the degree of force used as the need diminishes.

84. It was clearly established on September 23, 2025, that police officers may not seize an unarmed, non-dangerous individual without reasonable suspicion that the person had committed or was about to commit a crime.

85. It was clearly established on September 23, 2025, that police officers may not use force upon a person who is not reasonably suspected of committing a crime and that the use of excessive force is unconstitutional.

86. It was clearly established on September 23, 2025, that electronic control weapons (ECWs), in this case, “tasers,” (held to be dangerous per se and designed to cause excruciating pain), are proportional force only when deployed in response to a situation where the subject is violent so as to endanger responders, such that a reasonable officer would perceive some immediate danger that could be mitigated by using the taser.

87. It was clearly established on September 23, 2025, that the gratuitous or excessive use of a taser violates the clearly established right to be free from the use of excessive force.

88. It was clearly established on September 23, 2025, that the use of an ECW is excessive if more effective and less risky alternative methods of force are available.

89. An officer owes a constitutional duty to intervene to prevent a constitutional violation where the officer has reason to know that a constitutional violation is occurring or is about to occur and the officer has the opportunity and the means to prevent the harm from occurring.

**COUNT I – FOURTH AMENDMENT VIOLATION – UNLAWFUL DETENTION AND ARREST**

90. Plaintiff hereby re-alleges and incorporates individually, every numbered allegation contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

91. Plaintiff, MALIYAH HIMON was not suspected of having committed a crime when Defendants ANDREA LEBO, KENYETTA FRAZIER, TA'VAN HALL and CARY BORN arrived at her home on September 23, 2025.

92. Rather, Defendants ANDREA LEBO, KENYETTA FRAZIER, TA'VAN HALL and CARY BORN went to her home to pick up Ms. Himon's uncle.

93. Plaintiff MALIYAH NICHOLE HIMON owed Defendants ANDREA LEBO, KENYETTA FRAZIER, TA'VAN HALL and CARY BORN no duty to assist them with their efforts to detain her uncle.

94. However, Defendants ANDREA LEBO, KENYETTA FRAZIER, TA'VAN HALL and CARY BORN asked Ms. Himon to assist them by going to her uncle and asking him to come to the door and talk to the police.

95. Ms. Himon undertook to do as she was asked.

96. The defendants obviously came to believe that Ms. Himon's uncle was inside the garage of the home because Defendant HALL followed Ms. Himon and told his fellow officers that she was going toward the garage.

97. No officer instructed Ms. Himon not to contact her uncle or prohibited her from entering the garage.

98. The defendants obviously anticipated that their request of Ms. Himon to advise her uncle of their presence could prompt flight because they positioned themselves to prevent flight while Ms. Himon was doing what she was asked to do.

99. Defendants BORN and HALL entered the garage where their subject, Ms. Himon's uncle, was standing, almost immediately after Ms. Himon went inside.

100. Neither Defendant BORN nor Defendant HALL directed any of their attention to Ms. Himon or gave her any further instructions.

101. Rather, Defendants BORN and HALL immediately arrested their subject without incident as Defendants LEBO and FRAZIER looked on from the front entrance.

102. Plaintiff MALIYAH NICHOLE HIMON, who was not suspected of a crime and who was not told that she was being detained or was under arrest, had a constitutional right to be free from a restraint being imposed upon her liberty of movement by the defendants.

103. Plaintiff MALIYAH NICHOLE HIMON was simply seated on a couch when the defendants entered the garage.

104. No reasonable police officer would have believed that Plaintiff MALIYAH NICHOLE HIMON had committed a crime between the time that she was told to go get her uncle and the time that

Defendant FRAZIER opened the overhead garage door, exposing the uncle's arrest.

105. Under Michigan law, the crime known as "obstructing" makes a person's actions unlawful where the person "assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing" police duties. MCL §750.81d.

106. The statute encompasses physical interference, threatened force, or knowing failure to comply with a lawful command.

107. Inkster similarly makes it unlawful for a person to "knowingly obstruct, resist or oppose any police officer … in making or attempting to make an arrest." See Inkster, Mich., Code §131.06.

108. None of the defendants observed Plaintiff MALIYAH NICHOLE HIMON assault, batter, or wound a police officer.

109. Plaintiff MALIYAH NICHOLE HIMON was not under arrest, was not subject to a lawful command and did not interfere with her uncle's arrest; moreover, given that she was not under arrest, there was no arrest for her to resist and she did not disobey a lawful command.

110. Plaintiff MALIYAH NICHOLE HIMON did not physically interfere or threaten to physically interfere with the arrest of her uncle.

111. Plaintiff MALIYAH NICHOLE HIMON did nothing to endanger any of the defendants and no reasonable officer would have believed that Plaintiff MALIYAH NICHOLE HIMON posed any danger because:

a. She was doing what she was asked when she went to tell her uncle that the police were at the home and wanted to talk to him,

b. When the police entered the garage, Plaintiff MALIYAH NICHOLE HIMON, wearing shorts and a halter top, immediately sat down and raised her arms in the air,

c. Neither Defendant BORN nor Defendant HALL paid any attention to her or gave any instructions to her before Ms. Himon's uncle was on the ground being handcuffed,

d. Defendant HALL walked right between Ms. Himon and the subject,

e. Neither Defendant FRAZIER nor Defendant LEBO rushed into the garage, demonstrating that there was no imminency of danger, and

f. Any other reason that becomes known throughout discovery.

112. Plaintiff MALIYAH NICHOLE HIMON was free to leave the area of her uncle's arrest and defendants had no lawful reason to seize her.

113. Consequently, Plaintiff MALIYAH NICHOLE HIMON was unlawfully seized when Defendant KENYETTA FRAZIER grabbed her in violation of the Fourth Amendment to the United States Constitution, while acting under color of law as an Inkster Police officer, after asserting her authority by telling Ms. Himon to "shut up," "stand up," and forcefully reaching for and grabbing her to restrain her movement.

114. Plaintiff MALIYAH NICHOLE HIMON was unlawfully arrested when Defendant KENYETTA FRAZIER grabbed her, Defendant CARY BORN tased her, Defendant ANDREA LEBO assisted in handcuffing her and all four officers held her in handcuffs and urine-soaked clothing for approximately ½ hour.

**A. <u>Defendant KENYETTA FRAZIER</u>**

115. Defendant KENYETTA FRAZIER intentionally committed acts that operated to deprive Plaintiff MALIYAH NICHOLE HIMON of her Fourth Amendment right to be free from an unlawful seizure that included the following:

a. Restraining her freedom of movement by using her authority as a police officer and instructing Ms. Himon to stand from a seated position without reasonable suspicion to believe that she had committed or was about to commit a crime, or that she was a danger to herself or others,

b. Preventing Ms. Himon from leaving the area of her uncle's arrest by grabbing her and swinging her toward Defendant BORN, who tased her,

c. Causing Ms. Himon to be handcuffed and arrested without probable cause to believe that she had committed a crime, was committing a crime, or was about to commit a crime,

d. Detaining Ms. Himon in handcuffs at the scene of arrest without probable cause to believe that she had committed a crime, was committing a crime, or was about to commit a crime,

e. Causing Ms. Himon to be charged with the crime of obstruction,

f. Any other acts that become known throughout the course of discovery.

116. Defendant KENYETTA FRAZIER was acting under color of law as a police officer employed by the City of Inkster, Michigan, when she committed the acts that operated to deprive Plaintiff MALIYAH NICHOLE HIMON of her Fourth Amendment right to be free from an unlawful seizure.

117. Defendant KENYETTA FRAZIER's acts were a proximate cause of Plaintiff MALIYAH NICHOLE HIMON's injuries and damages.

**B. <u>Defendant ANDREA LEBO</u>**

118. Defendant ANDREA LEBO intentionally committed acts that operated to deprive Plaintiff MALIYAH NICHOLE HIMON of her Fourth Amendment right to be free from an unlawful seizure that included the following:

a. Failing to intervene to prevent the seizure and arrest of Plaintiff MALIYAH NICHOLE HIMON when a reasonable officer would not have reasonably suspected her of having committed a crime or that she was about to commit a crime, or that she was a danger to herself or others,

b. Assisting Defendant KENYETTA FRAZIER with the handcuffing and arrest of Plaintiff MALIYAH NICHOLE HIMON when there was no probable cause to believe she had committed a crime, was committing a crime, or was about to commit a crime,

c. Detaining Ms. Himon in handcuffs at the scene of arrest without probable cause to believe that she had committed a crime, was committing a crime, or was about to commit a crime,

d. Causing Ms. Himon to be charged with the crime of obstruction,

e. Any other acts that become known throughout the course of discovery.

119. Defendant ANDREA LEBO was acting under color of law as a police officer employed by the City of Inkster, Michigan, when she committed the acts that operated to deprive Plaintiff MALIYAH

NICHOLE HIMON of her Fourth Amendment right to be free from an unlawful seizure.

120. Defendant ANDREA LEBO's acts were a proximate cause of Plaintiff MALIYAH NICHOLE HIMON's injuries and damages.

**C. Defendant TA'VAN HALL**

121. Defendant TA'VAN HALL intentionally committed acts that operated to deprive Plaintiff MALIYAH NICHOLE HIMON of her Fourth Amendment right to be free from an unlawful seizure that included the following:

a. Causing the seizure by asserting that Ms. Himon should be arrested for obstruction without reasonable suspicion to believe that she had committed or was about to commit a crime, or that she was a danger to herself or others,

b. Failing to advise Defendant FRAZIER that there was no reasonable basis to detain Plaintiff MALIYAH NICHOLE HIMON,

c. Detaining Ms. Himon in handcuffs at the scene of arrest without probable cause to believe that she had committed a crime, was committing a crime, or was about to commit a crime,

d. Causing Ms. Himon to be charged with the crime of obstruction,

e. Any other acts that become known throughout the course of discovery.

122. Defendant TA'VAN HALL was acting under color of law as a police officer employed by the City of Inkster, Michigan, when he committed the acts that operated to deprive Plaintiff MALIYAH NICHOLE HIMON of her Fourth Amendment right to be free from an unlawful seizure.

123. Defendant TA'VAN HALL's acts were a proximate cause of Plaintiff MALIYAH NICHOLE HIMON's injuries and damages.

**D. <u>Defendant CARY BORN</u>**

124. Defendant CARY BORN intentionally committed acts that operated to deprive Plaintiff MALIYAH NICHOLE HIMON of her Fourth Amendment right to be free from an unlawful seizure that included the following:

a. Failing to advise Defendant FRAZIER that there was no reasonable basis to detain Plaintiff MALIYAH NICHOLE HIMON when a reasonable officer would not have reasonably suspected her of having committed or being about to commit a crime, or that she was a danger to herself or others,

b. Assisting Defendant KENYETTA FRAZIER with the handcuffing and arrest of Plaintiff MALIYAH NICHOLE HIMON by tasing her when there was no probable cause to believe she had committed a crime, was committing a crime, or was about to commit a crime,

c. Detaining Ms. Himon in handcuffs at the scene of arrest without probable cause to believe that she had committed a crime, was committing a crime, or was about to commit a crime,

d. Causing Ms. Himon to be charged with the crime of obstruction,

e. Any other acts that become known throughout the course of discovery.

125. Defendant CARY BORN was acting under color of law as a police officer employed by the City of Inkster, Michigan, when she committed the acts that operated to deprive Plaintiff MALIYAH NICHOLE HIMON of her Fourth Amendment right to be free from an unlawful seizure.

126. Defendant CARY BORN's acts were a proximate cause of Plaintiff MALIYAH NICHOLE HIMON's injuries and damages.

127. The actions and inactions of Defendants ANDREA LEBO, KENYETTA FRAZIER, TA'VAN HALL, and CARY BORN proximately caused the deprivation of Plaintiff MALIYAH NICHOLE HIMON's liberty, and her physical and emotional injuries in the past, at the present, and into the future.

128. Plaintiff MALIYAH NICHOLE HIMON is entitled to and demands compensation for her past, present, and future injuries, including:

a. Reasonable compensation for the deprivation of her constitutional rights, including but not limited to being subjected to excessive force, unlawful detention, and an unlawful arrest.

b. Reasonable compensation for the physical pain and suffering that she endured when she was grabbed, detained, tased, thrown to the ground, and handcuffed and the physical pain that she will continue to endure into the future,

c. Reasonable compensation for any physical injuries that she sustained when she was grabbed, detained, tased, thrown to the ground, and handcuffed and from which she will continue to suffer into the future,

d. Reasonable compensation for the mental anguish she suffered and will continue to suffer into the future that includes but is not limited to post-traumatic stress disorder,

e. Reasonable compensation for the denial of social pleasure and enjoyments that she has suffered and will continue to suffer into the future,

f. Reasonable compensation for the fright and shock that she suffered and will continue to suffer into the future,

g. Reasonable compensation for the embarrassment, humiliation, and/or mortification that she has suffered and will continue to suffer into the future,

h. Reasonable compensation for any aggravation of preexisting ailments or conditions that she has suffered and will continue to suffer into the future,

i. Reasonable compensation for medical and therapeutic treatment expenses she has incurred and will continue to incur into the future,

j. Repayment of any liens for services incurred by her,

k. Economic damages including but not limited to wage loss, loss of earning capacity, and the loss of the value of services that she has suffered and will continue to suffer into the future,

l. Allowable interest,

m. Allowable costs and fees,

n. Allowable attorney fees, and

o. Any additional allowable damages that become known throughout the course of litigation.

129. Plaintiff further demands punitive damages because the conduct of Defendants ANDREA LEBO, KENYETTA FRAZIER, TA'VAN HALL, and CARY BORN was reckless or callously indifferent to Plaintiff MALIYAH HIMON's constitutional rights in that they knew that there was no lawful basis to arrest her but kept her detained in handcuffs and urine-soaked clothing at the scene of the detention in front of neighbors and family members and then took steps to pursue baseless criminal charges.

WHEREFORE, Plaintiff MALIYAH NICHOLE HIMON respectfully requests that this Honorable Court enter judgment in her favor and

against Defendants ANDREA LEBO, KENYETTA FRAZIER, TA'VAN HALL, and CARY BORN in an amount in excess of Seventy-Five Thousand Dollars (>$75,000.00) as it deems fair and just plus punitive damages and allowable costs, interest, and attorney fees.

**COUNT II – FOURTH AMENDMENT VIOLATION – EXCESSIVE FORCE**

130. Plaintiff hereby re-alleges and incorporates individually, every numbered allegation contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

131. Defendants ANDREA LEBO, KENYETTA FRAZIER, and CARY BORN each owed Plaintiff MALIYAH NICHOLE HIMON a duty to refrain from using excessive force upon her.

132. It is recognized that a police officer may use reasonable force to make a lawful arrest.

133. The defendants in this matter had no basis to make an arrest of Plaintiff MALIYAH NICHOLE HIMON; therefore, no objectively reasonable officer would have believed the degree of force employed was necessary under the circumstances confronting these defendants.

134. When assessing whether force that was used was reasonable, the objective question is whether the force used was objectively reasonable in light of the facts known by the officers and the facts confronting them at the time considering: (1) the severity of the crime at issue, (2) whether the person being arrested posed an immediate threat to the safety of the officers or others, and (3) whether the person was actively resisting arrest or attempting to evade arrest by flight.

135. Plaintiff MALIYAH NICHOLE HIMON was not reasonably suspected of committing any crime when she was arrested and any crime that she was unreasonably suspected of committing was non-violent.

136. Plaintiff MALIYAH NICHOLE HIMON did not pose an immediate threat to the safety of anyone when Defendant KENYETTA FRAZIER initiated steps to arrest her; rather:

a. She was seated on a couch holding her hands in the air,
b. She had engaged in no assaultive behavior,
c. She had not threatened anyone,
d. She had been given no commands with which she failed to comply,
e. She was not told that she was under arrest,

f. She was not told to remain where she was; rather, she was told to stand from a seated position, which she did,

g. No one told her that she was not free to leave,

h. Defendant TA'VAN HALL casually walked between her and the actual arrestee without any concern,

i. Defendant CARY BORN said nothing to her,

j. Defendant ANDREA LEBO said nothing to her,

k. Defendants ANDREA LEBO and KENYETTA FRAZIER showed no sense of urgency toward her when they entered the garage.

137. Plaintiff MALIYAH NICHOLE HIMON presented no flight risk because she had committed no crime from which to flee.

138. Furthermore, it was clearly established on September 23, 2025, that the failure to follow a command, the act of walking away from an officer, and the act of pulling away from an officer do not rise to the level of active resistance.

139. Plaintiff MALIYAH NICHOLE HIMON was not told that she was under arrest; she was not told she could not leave the garage, and she complied with all commands that were given to her.

140. No *Graham Factor* supported the use of any force, much less the level of force used by Defendant CARY BORN when she tased

Plaintiff MALIYAH NICHOLE HIMON in dart-probe mode, in the chest, near the heart, at nearly point-blank range.

141. Defendant CARY BORN's act of tasing the plaintiff in the manner in which she did was against accepted police procedure for taser usage, contrary to manufacturer recommendations, and contrary to customary municipal policy.

142. Defendant CARY BORN admitted that she could have used less force to detain Ms. Himon, rendering the tasing to be gratuitous.

### A. <u>Defendant KENYETTA FRAZIER</u>

143. Defendant KENYETTA FRAZIER intentionally committed acts that operated to deprive Plaintiff MALIYAH NICHOLE HIMON of her Fourth Amendment right to be free from excessive force that included the following:

a. Forcefully grabbing her and slinging her toward Defendant CARY BORN,

b. Holding her to the ground and handcuffing her,

c. Any other acts that become known throughout the course of discovery.

144. Defendant KENYETTA FRAZIER was acting under color of law as a police officer employed by the City of Inkster, Michigan, when she committed the acts that operated to deprive Plaintiff MALIYAH

NICHOLE HIMON of her Fourth Amendment right to be free from excessive force.

145. Defendant KENYETTA FRAZIER's acts were a proximate cause of Plaintiff MALIYAH NICHOLE HIMON's injuries and damages.

**B. <u>Defendant ANDREA LEBO</u>**

146. Defendant ANDREA LEBO intentionally committed acts that operated to deprive Plaintiff MALIYAH NICHOLE HIMON of her Fourth Amendment right to be free from excessive force that included the following:

a. Assisting with the handcuffing and holding her to the ground,

b. Any other acts that become known throughout the course of discovery.

147. Defendant ANDREA LEBO was acting under color of law as a police officer employed by the City of Inkster, Michigan, when she committed the acts that operated to deprive Plaintiff MALIYAH NICHOLE HIMON of her Fourth Amendment right to be free from excessive force.

148. Defendant ANDREA LEBO's acts were a proximate cause of Plaintiff MALIYAH NICHOLE HIMON's injuries and damages.

### C. **Defendant CARY BORN**

149. Defendant CARY BORN intentionally committed acts that operated to deprive Plaintiff MALIYAH NICHOLE HIMON of her Fourth Amendment right to be free from excessive force that included the following:

a. Tasing her in the chest in dart-probe mode at near point-blank range,

b. Any other acts that become known throughout the course of discovery.

150. Defendant CARY BORN was acting under color of law as a police officer employed by the City of Inkster, Michigan, when she committed the acts that operated to deprive Plaintiff MALIYAH NICHOLE HIMON of her Fourth Amendment right to be free from excessive force.

151. Defendant CARY BORN's acts were a proximate cause of Plaintiff MALIYAH NICHOLE HIMON's injuries and damages.

152. The actions and inactions of Defendants ANDREA LEBO, KENYETTA FRAZIER, and CARY BORN proximately caused the deprivation of Plaintiff MALIYAH NICHOLE HIMON's constitutional rights, and her physical and emotional injuries in the past, at the present, and into the future.

153. Plaintiff MALIYAH NICHOLE HIMON is entitled to and demands compensation for her past, present, and future injuries, including:

a. Reasonable compensation for the deprivation of her constitutional rights, including but not limited to being subjected to excessive force, unlawful detention, and an unlawful arrest.

b. Reasonable compensation for the physical pain and suffering that she endured when she was grabbed, detained, tased, thrown to the ground, and handcuffed and the physical pain that she will continue to endure into the future,

c. Reasonable compensation for any physical injuries that she sustained when she was grabbed, detained, tased, thrown to the ground, and handcuffed and from which she will continue to suffer into the future,

d. Reasonable compensation for the mental anguish she suffered and will continue to suffer into the future that includes but is not limited to post-traumatic stress disorder,

e. Reasonable compensation for the denial of social pleasure and enjoyments that she has suffered and will continue to suffer into the future,

f. Reasonable compensation for the fright and shock that she suffered and will continue to suffer into the future,

g. Reasonable compensation for the embarrassment, humiliation, and/or mortification that she has suffered and will continue to suffer into the future,

h. Reasonable compensation for any aggravation of preexisting ailments or conditions that she has suffered and will continue to suffer into the future,

i. Reasonable compensation for medical and therapeutic treatment expenses she has incurred and will continue to incur into the future,

j. Repayment of any liens for services incurred by her,

k. Economic damages including but not limited to wage loss, loss of earning capacity, and the loss of the value of services that she has suffered and will continue to suffer into the future,

l. Allowable interest,

m. Allowable costs and fees,

n. Allowable attorney fees, and

o. Any additional allowable damages that become known throughout the course of litigation.

154. Plaintiff further demands punitive damages because the conduct of Defendants ANDREA LEBO, KENYETTA FRAZIER, and CARY BORN was reckless or callously indifferent to Plaintiff MALIYAH HIMON's constitutional rights in that they knew that there was no lawful basis to arrest her but used excessive and gratuitous force.

WHEREFORE, Plaintiff MALIYAH NICHOLE HIMON respectfully requests that this Honorable Court enter judgment in her favor and against Defendants ANDREA LEBO, KENYETTA FRAZIER, and CARY BORN in an amount in excess of Seventy-Five Thousand Dollars (>$75,000.00) as it deems fair and just plus punitive damages and allowable costs, interest, and attorney fees.

**COUNT III – FAILURE TO INTERVENE IN VIOLATION OF THE FOURTH AMENDMENT**

155. Plaintiff hereby re-alleges and incorporates individually, every numbered allegation contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

156. It was clearly established on September 23, 2025, that a police officer owes a duty to an arrestee to intervene in order to prevent an arrest from being made without probable cause to make the arrest.

157. Defendants ANDREA LEBO, TA'VAN HALL, and CARY BORN each owed Plaintiff MALIYAH NICHOLE HIMON a duty to prevent Defendant KENYETTA FRAZIER from unlawfully detaining and arresting her.

158. Each defendant knew or had reason to know that Defendant KENYETTA FRAZIER was about to violate Plaintiff MALIYAH NICHOLE HIMON's constitutional rights when she began directing orders at her because they were all aware that the plaintiff had done nothing to warrant detention.

159. Each defendant had both the means and opportunity to intervene by simply advising Defendant KENYETTA FRAZIER that the plaintiff had done nothing wrong.

160. Rather than intervening to prevent the detention, the defendants said nothing.

161. Defendants ANDREA LEBO and CARY BORN actively participated in the arrest and use of unreasonable force.

162. Furthermore, after Plaintiff MALIYAH NICHOLE HIMON was handcuffed, each defendant had the time and opportunity to prevent the further deprivation of liberty.

163. Instead of releasing the plaintiff and ensuring that she was not unlawfully charged with crimes, they knowingly permitted the further deprivation of Ms. Himon's liberty.

164. Instead of releasing Plaintiff MALIYAH NICHOLE HIMON and preventing charges from being brought against her, they allowed

her to be held in handcuffs while wearing urine-soaked clothing for nearly thirty minutes and did nothing to prevent the criminal process from being initiated.

165. The actions and inactions of Defendants ANDREA LEBO, TA'VAN HALL, and CARY BORN proximately caused the deprivation of Plaintiff MALIYAH NICHOLE HIMON's constitutional rights, and her physical and emotional injuries in the past, at the present, and into the future.

166. Plaintiff MALIYAH NICHOLE HIMON is entitled to and demands compensation for her past, present, and future injuries, including:

a. Reasonable compensation for the deprivation of her constitutional rights, including but not limited to being subjected to excessive force, unlawful detention, and an unlawful arrest.

b. Reasonable compensation for the physical pain and suffering that she endured when she was grabbed, detained, tased, thrown to the ground, and handcuffed and the physical pain that she will continue to endure into the future,

c. Reasonable compensation for any physical injuries that she sustained when she was grabbed, detained, tased, thrown to the ground, and handcuffed and from which she will continue to suffer into the future,

d. Reasonable compensation for the mental anguish she suffered and will continue to suffer into the future that includes but is not limited to post-traumatic stress disorder,

e. Reasonable compensation for the denial of social pleasure and enjoyments that she has suffered and will continue to suffer into the future,

f. Reasonable compensation for the fright and shock that she suffered and will continue to suffer into the future,

g. Reasonable compensation for the embarrassment, humiliation, and/or mortification that she has suffered and will continue to suffer into the future,

h. Reasonable compensation for any aggravation of preexisting ailments or conditions that she has suffered and will continue to suffer into the future,

i. Reasonable compensation for medical and therapeutic treatment expenses she has incurred and will continue to incur into the future,

j. Repayment of any liens for services incurred by her,

k. Economic damages including but not limited to wage loss, loss of earning capacity, and the loss of the value of services that she has suffered and will continue to suffer into the future,

l. Allowable interest,

m. Allowable costs and fees,

n. Allowable attorney fees, and

o. Any additional allowable damages that become known throughout the course of litigation.

167. Plaintiff further demands punitive damages because the conduct of Defendants ANDREA LEBO, TA'VAN HALL, KENYETTA FRAZIER, and CARY BORN was reckless or callously indifferent to Plaintiff MALIYAH HIMON's constitutional rights in that they knew that there was no lawful basis to arrest her but used excessive and gratuitous force.

WHEREFORE, Plaintiff MALIYAH NICHOLE HIMON respectfully requests that this Honorable Court enter judgment in her favor and against Defendants ANDREA LEBO, TA'VAN HALL, KENYETTA FRAZIER, and CARY BORN in an amount in excess of Seventy-Five Thousand Dollars (>$75,000.00) as it deems fair and just plus punitive damages and allowable costs, interest, and attorney fees.

**<u>COUNT IV – ASSAULT & BATTERY</u>**

168. Plaintiff hereby re-alleges and incorporates individually, every numbered allegation contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

169. Under Michigan common law, an assault occurs when a person intentionally engages in an unlawful act that places another

in reasonable apprehension of imminent harmful or offensive physical contact.

170. Under Michigan common law, a battery occurs when a person intentionally causes harmful or offensive physical contact with another person without consent or lawful justification.

171. Police officers are permitted to use only such force as is reasonably necessary under the circumstances to perform their lawful duties, and the use of unnecessary or excessive force may constitute assault and battery under Michigan law.

172. At all material times, Plaintiff MALIYAH NICHOLE HIMON was unarmed, was not threatening any person, was not actively resisting arrest, and had complied with the instructions given to her by the defendant officers.

173. Defendants KENYETTA FRAZIER, CARY BORN, and ANDREA LEBO intentionally committed acts constituting assault and battery upon Plaintiff MALIYAH NICHOLE HIMON.

### A. **Defendant KENYETTA FRAZIER**

174. Defendant KENYETTA FRAZIER committed acts constituting assault and battery upon Plaintiff MALIYAH NICHOLE HIMON that included:

a. Aggressively lunging toward Plaintiff, placing her in reasonable apprehension of immediate harmful or offensive physical contact,

b. Forcefully grabbing Plaintiff without lawful justification,

c. Forcibly slinging Plaintiff toward Defendant CARY BORN, who was holding a taser,

d. Participating in the physical restraint and handcuffing of Plaintiff after Defendant BORN deployed her taser, and

e. Any other acts that become known throughout the course of discovery.

175. Defendant FRAZIER's intentional acts were committed without Plaintiff's consent and without lawful justification and involved force that was unnecessary and excessive under the circumstances.

### B. **Defendant CARY BORN**

176. Defendant CARY BORN intentionally committed acts constituting assault and battery upon Plaintiff MALIYAH NICHOLE HIMON that included:

a. Intentionally aiming and discharging her taser at Plaintiff's chest in dart-probe mode at nearly point-blank range,

b. Intentionally causing the taser probes to penetrate Plaintiff's chest and deliver an electrical discharge resulting in neuromuscular incapacitation,

c. Causing Plaintiff to fall to the ground, experience severe pain, and involuntarily urinate upon herself, and

d. Any other acts that become known throughout the course of discovery.

177. Defendant BORN intentionally deployed the taser despite knowing that Plaintiff was unarmed, had not threatened any person, and had not engaged in active resistance or assaultive conduct.

178. Defendant BORN's intentional use of the taser was without Plaintiff's consent or lawful justification and constituted unnecessary and excessive force under the circumstances.

**a. <u>Defendant ANDREA LEBO</u>**

179. Defendant ANDREA LEBO intentionally committed acts constituting battery upon Plaintiff MALIYAH NICHOLE HIMON that included:

a. Physically participating in the restraint and handcuffing of Plaintiff when there was no lawful justification for the arrest,

b. Participating in the continued physical restraint of Plaintiff despite knowing that Plaintiff had been complying with Defendant LEBO's own instructions to contact her uncle, and

c. Any other acts that become known throughout the course of discovery.

180. Defendant LEBO's intentional physical contact with Plaintiff was without Plaintiff's consent or lawful justification and constituted unnecessary and excessive force under the circumstances.

181. At all material times, Defendants FRAZIER, BORN, and LEBO were acting under color of law and in the course of their employment as officers of the Inkster Police Department.

182. Defendants FRAZIER, BORN, and LEBO did not undertake the aforementioned intentional acts in good faith, but acted maliciously, in bad faith, or with wanton and reckless disregard for Plaintiff's rights and bodily integrity.

183. Defendant FRAZIER knew that Plaintiff had been instructed by Defendant LEBO to contact her uncle, knew that Plaintiff had not engaged in threatening or assaultive conduct, and nevertheless intentionally initiated an unjustified physical seizure of Plaintiff.

184. Defendant BORN knew that Plaintiff was unarmed, was not actively resisting arrest, and posed no immediate threat of harm, yet intentionally discharged her taser into Plaintiff's chest at close range, despite the absence of circumstances reasonably requiring such force.

185. Defendant LEBO knew that Plaintiff had been carrying out the instructions LEBO herself had given, knew that Plaintiff had not threatened or assaulted the officers, and nevertheless intentionally participated in Plaintiff's physical restraint and handcuffing.

186. The conduct of Defendants FRAZIER, BORN, and LEBO was undertaken maliciously, in bad faith, or with wanton and reckless disregard for Plaintiff's rights, and was not the product of an honest, good-faith belief that the force employed was necessary to perform their lawful duties.

187. Accordingly, Defendants FRAZIER, BORN, and LEBO are not entitled to individual governmental immunity for their intentional tortious conduct under Michigan common law.

188. The intentional acts of Defendants FRAZIER, BORN, and LEBO were a direct and proximate cause of Plaintiff MALIYAH NICHOLE HIMON's physical injuries, pain and suffering, mental

anguish, humiliation, embarrassment, and other damages alleged herein.

189. Plaintiff is entitled to recover compensatory damages for all injuries proximately caused by the intentional tortious conduct of Defendants FRAZIER, BORN, and LEBO, together with all other relief permitted by Michigan law, as stated previously in this Complaint.

WHEREFORE, Plaintiff MALIYAH NICHOLE HIMON respectfully requests that this Honorable Court enter judgment in her favor and against Defendants ANDREA LEBO, KENYETTA FRAZIER, and CARY BORN in an amount in excess of Seventy-Five Thousand Dollars (>$75,000.00) as it deems fair and just plus punitive damages and allowable costs, interest, and attorney fees.

**COUNT V – FALSE ARREST & FALSE IMPRISONMENT**

190. Plaintiff hereby re-alleges and incorporates individually, every numbered allegation contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

191. Under Michigan common law, false arrest occurs when a defendant participates in an illegal and unjustified arrest without probable cause.

192. Under Michigan common law, false imprisonment occurs when a defendant intentionally causes or participates in the unlawful confinement of another person, directly or indirectly resulting in confinement of which the person is conscious.

193. A police officer may not lawfully arrest or imprison a person without probable cause or other lawful justification.

194. Plaintiff MALIYAH NICHOLE HIMON had committed no crime, was not the subject of the arrest warrant being executed by the defendants and had engaged in no conduct that provided probable cause for her arrest.

195. Rather, Plaintiff was complying with the instructions given to her by Defendant ANDREA LEBO to contact her uncle and inform him that the police were present.

196. No defendant observed Plaintiff assault, threaten, obstruct, or physically interfere with any officer, knowingly disobey a lawful command, or engage in any other conduct establishing probable cause for her arrest.

197. Nevertheless, Defendants KENYETTA FRAZIER, ANDREA LEBO, TA'VAN HALL, and CARY BORN intentionally participated in Plaintiff's unlawful arrest and imprisonment.

**A. <u>Defendant KENYETTA FRAZIER</u>**

198. Defendant KENYETTA FRAZIER intentionally committed acts constituting false arrest and false imprisonment that included:

a. Directing Plaintiff to stand from her seated position despite the absence of reasonable suspicion or probable cause to believe she had committed a crime,

b. Forcefully grabbing Plaintiff and restraining her freedom of movement without lawful justification,

c. Forcibly swinging Plaintiff toward Defendant CARY BORN, thereby facilitating her subsequent tasing and physical restraint,

d. Participating in Plaintiff's handcuffing and arrest without probable cause,

e. Knowingly participating in Plaintiff's continued detention in handcuffs for approximately thirty minutes despite the absence of lawful justification, and

f. Any other acts that become known throughout the course of discovery.

**B. <u>Defendant TA'VAN HALL</u>**

199. Defendant TA'VAN HALL intentionally committed acts constituting false arrest and false imprisonment that included:

a. Observing Plaintiff proceed toward the garage in response to Defendant LEBO's instructions,

b. Observing Plaintiff's conduct in the garage and knowing that she had not physically interfered with the arrest of her uncle,

c. Affirmatively recommending that Plaintiff be arrested for obstruction despite the absence of probable cause,

d. Causing or materially contributing to the decision of Defendant FRAZIER to initiate Plaintiff's arrest,

e. Knowingly participating in Plaintiff's continued detention despite the absence of probable cause, and

f. Any other acts that become known throughout the course of discovery.

**C. <u>Defendant ANDREA LEBO</u>**

200. Defendant ANDREA LEBO intentionally committed acts constituting false arrest and false imprisonment that included:

a. Instructing Plaintiff to contact her uncle and advise him that police officers were present and wished to speak with him,

b. Knowing that Plaintiff had undertaken to comply with those instructions and had engaged in no conduct establishing probable cause for her arrest,

c. Participating in Plaintiff's handcuffing and arrest despite knowing that Plaintiff had done nothing to obstruct the officers,

d. Knowingly participating in Plaintiff's continued detention in handcuffs despite the absence of probable cause, and

e. Any other acts that become known throughout the course of discovery.

**D. Defendant CARY BORN**

201. Defendant CARY BORN intentionally committed acts constituting false arrest and false imprisonment that included:

a. Observing Plaintiff seated on a couch with her hands raised and knowing that she posed no immediate threat to the officers,

b. Intentionally deploying her taser against Plaintiff, thereby physically incapacitating her and facilitating her arrest,

c. Participating in Plaintiff's arrest and confinement without probable cause,

d. Knowingly participating in Plaintiff's continued detention in handcuffs despite the absence of lawful justification, and

e. Any other acts that become known throughout the course of discovery.

202. The aforementioned acts of Defendants FRAZIER, HALL, LEBO, and BORN directly or indirectly caused Plaintiff MALIYAH NICHOLE HIMON to be physically restrained, handcuffed, arrested, and confined against her will.

203. Plaintiff was conscious of her confinement and understood that she was not free to leave after she was taken to the ground and handcuffed.

204. Plaintiff was detained in handcuffs for approximately thirty minutes while wearing urine-soaked clothing and suffering from the effects of the taser deployment.

205. Throughout Plaintiff's confinement, the defendants knew that she had been carrying out Defendant LEBO's instructions and had not engaged in conduct establishing probable cause for her arrest.

206. The arrest and confinement of Plaintiff were without probable cause, without her consent, and without other lawful justification.

207. At all material times, Defendants FRAZIER, HALL, LEBO, and BORN were acting in the course of their employment as officers of the Inkster Police Department.

208. Defendants FRAZIER, HALL, LEBO, and BORN did not undertake the aforementioned acts in good faith or pursuant to an honest belief that probable cause existed to arrest and confine Plaintiff.

209. Defendant FRAZIER knew that Plaintiff had engaged in no criminal conduct and nevertheless intentionally initiated her arrest and continued confinement.

210. Defendant HALL knew that Plaintiff had been complying with Defendant LEBO's instructions, knew that Plaintiff had not obstructed the arrest of her uncle, and nevertheless affirmatively recommended that she be arrested for obstruction.

211. Defendant LEBO knew that Plaintiff had followed the very instructions that LEBO herself had given and nevertheless intentionally participated in Plaintiff's arrest and continued confinement.

212. Defendant BORN knew that Plaintiff was unarmed, was not resisting arrest, and had engaged in no conduct establishing probable cause, yet intentionally participated in Plaintiff's arrest and confinement.

213. The acts of Defendants FRAZIER, HALL, LEBO, and BORN were undertaken maliciously, in bad faith, or with wanton and reckless disregard for Plaintiff's liberty and rights, rather than pursuant to an honest, good-faith belief that their conduct was lawful.

214. Accordingly, Defendants FRAZIER, HALL, LEBO, and BORN are not entitled to individual governmental immunity for their intentional tortious conduct under Michigan common law.

215. The intentional acts of Defendants FRAZIER, BORN, HALL, and LEBO were a direct and proximate cause of Plaintiff MALIYAH NICHOLE HIMON's physical injuries, pain and suffering, mental anguish, humiliation, embarrassment, and other damages alleged herein.

216. Plaintiff is entitled to recover compensatory damages for all injuries proximately caused by the intentional tortious conduct of Defendants FRAZIER, BORN, HALL, and LEBO, together with all other relief permitted by Michigan law, as stated previously in this Complaint.

WHEREFORE, Plaintiff MALIYAH NICHOLE HIMON respectfully requests that this Honorable Court enter judgment in her favor and against Defendants ANDREA LEBO, KENYETTA FRAZIER, TA'VAN HALL, and CARY BORN in an amount in excess of Seventy-Five Thousand Dollars (>$75,000.00) as it deems fair and just plus punitive damages and allowable costs, interest, and attorney fees.

Respectfully submitted,

*/s/ Gary N. Felty, Jr.*

GARY N. FELTY, JR. (P55554)
JAMES J. HARRINGTON, IV (P65351)
Fieger, Fieger, Kenney & Harrington, P.C.
Attorney for Plaintiff
19390 West Ten Mile Road
Southfield, Michigan 48075
(248) 355-5555
g.felty@fiegerlaw.com

Dated: November 20, 2026

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MALIYAH NICHOLE HIMON,

Plaintiff,

Case No.: ______________
Hon. ___________________

vs.

INKSTER POLICE LT. ANDREA LEBO, INKSTER POLICE OFFICER KENYETTA FRAZIER, INKSTER POLICE OFFICER TA'VAN HALL, and INKSTER POLICE OFFICER CARY BORN,

Defendants.

---

JAMES J. HARRINGTON, IV (P65351)
GARY N. FELTY, JR. (P55554)
Attorneys for Plaintiff
Fieger, Fieger, Kenney & Harrington, P.C.
19390 West Ten Mile Road
Southfield, MI 48075
(248) 355-5555
Fax: (248) 355-5148
j.harrington@fiegerlaw.com
g.felty@fiegerlaw.com

---

**PLAINTIFF'S DEMAND FOR TRIAL BY JURY**

NOW COMES, MALIYAH NICHOLE HIMON, through her attorneys, FIEGER, FIEGER, KENNEY & HARRINGTON, P.C., and hereby requests trial by jury in this matter.

Respectfully submitted,

*/s/ Gary N. Felty, Jr.*

GARY N. FELTY, JR. (P55554)
JAMES J. HARRINGTON, IV (P65351)
Fieger, Fieger, Kenney & Harrington, P.C.
Attorney for Plaintiff
19390 West Ten Mile Road
Southfield, Michigan 48075
(248) 355-5555
g.felty@fiegerlaw.com

Dated: November 20, 2026